On behalf of Israel Revis Gomez I would like to reserve five minutes please. All right, please watch your clock. Yes, Your Honor. Not every murder orchestrated by a gang member is a violation of 1959. Here the government turned a state case into a federal one by arguing that there was a gang killing based on the statements of Marcus Castro. Specifically, Marcus Castro spun a story about a retaliatory gang murder that came from Castro and only Castro. And Revis Gomez was not only deprived of his opportunity to confront Marcus Castro, Marcus Castro's credibility was repeatedly vouched for by government agent after government agent. But before we get to that and the amendment Miranda violation, even with those unfair advantages, the government failed to prove count one beyond a reasonable doubt. Specifically, with respect to count one, Revis Gomez could only be guilty under a theory of aiding and abetting because it cannot be said on this record that he caused an act that was a substantial cause of Abel's death such that his death would have resulted but for that act. And so we look at Rosamond, the United States, and that tells us that Revis Gomez needed to have advanced knowledge at a time when he could walk away. And there is zero evidence that when Revis Gomez got to the canal that when he encountered Molesto, who had someone who he didn't know, with a knife to his throat and when Revis Gomez was not even allowed to walk back to his car by himself without being escorted by Little Whisperer, who was armed with a machete. At that point, Revis Gomez was stuck. Was there any direct evidence that Revis had advanced knowledge at a time when he had the opportunity to withdraw? It seemed to me it was all circumstantial evidence, you know, his motivation to rise in the gang, Snake's testimony. There was a deleted phone call between Revis and Molesto. Correct, there was no evidence that Revis Gomez had knowledge. The only two people who even claimed to have had advanced knowledge would be Snakers and Castro. And there's absolutely no evidence that Revis Gomez had any conversation with either of them during the relevant time period. Castro was from an entirely different clique and Snakers had not spoken to anybody in a year and a half since he left Mendota. And so there is no evidence that he had advanced knowledge before he got to the canal, at which point he was stuck. And so based on Roseman v. United States, we cannot assume that Revis Gomez had the requisite intent because the government failed to prove, beyond a reasonable doubt, that he had advanced knowledge before he got there. What was the evidence as to why he went to the canal in the first place? The objective evidence of why he went to the canal is he received a phone call from, I think it was, I think it was either Palancho or Little Whisper, who told him to come over to the house to smoke some marijuana. He'd been there earlier that day and he came back to smoke marijuana, at which point he was told, you know, we need to go out to this canal, where they arrived at this canal, on the opposite side of where Molesto was holding this individual at knifepoint. So that that's that's the evidence in terms of how he got to the canal. But we have to review the evidence in the light most favorable to the prosecution here, right? And can't circumstantial evidence, some of it, but isn't that enough? You know, Snakers saying that Rivas Gomez wanted to rise to the rank of a homeboy and told him about it or was aware of it, the deleted text messages, isn't that enough, viewed in the light most favorable to the prosecution? No, no, Your Honor. With respect to that, there's there's no evidence that there was any communication with, to Rivas Gomez. The messages that went back and forth, the government agents specifically said over and over again, they could not say that there was any connection. We have two clear missed calls and then one that went on for, I think, 53 seconds, and the government agent, several government agents, said we cannot say that there was any connection there. And so, so there is, there just simply is no evidence of that. If we get to Snakers' testimony, that that was so implausible on its face that it is simply not credible. So we have Snakers saying that when he left Mendota in July of 2016, that Rivas Gomez was, at best, a parrot who had nothing concrete with the gang. And then he went on to testify that, that Rivas Gomez was present at the planning for the murder of Christina Echevria. Now the problem for, for Snakers' testimony is we know when Christina Echevria died. It was three months later. And so, Snakers' own testimony is you cannot go from being a parrot with nothing concrete with the gang to being on the cusp of being a homeboy in the span of a couple of weeks. Even Snakers said there's a whole other level, the observation level, where you have to observe for a period of time someone selling drugs. And then the rules for the gang that was introduced at trial said it took about approximately four years of being a parrot to KO before you'd be on the cusp of being a homeboy. So that testimony, which Snakers did not even deliver until over two years after debriefing with the government, and after he was facing two murder charges, and there were two AUSAs in the room, that, that testimony is just simply, it, it sort of rises to the level of not credible. And so that's the problem. Gannon. I mean, these are, I mean, these are good arguments for the jury, but the jury already rendered its verdict, and we have to view it in the light and most favorable to the prosecution. So that brings us to the Crawford violation, the Crawford violation on steroids. The government's theory of this case, an argument, in the opening, in its closing, and its rebuttal, was we know this is a gang murder because of Castro's story, because it was a retaliatory murder against another gang member. That comes from Castro and only Castro. Castro is the only one who said that this was a rival gang member from the Bulldogs. And the evidence would actually suggest he wasn't. His own father said that he hung out at, at a house that the government established was an MS-13 gang house. And, and so, nevertheless, the government leaned into this story that Castro spun, that this was a retaliatory gang murder, that this, a junior person, Palancho, had been attacked by some gang members, and then went back to the Parkview clique and told them all about it. And we had Castro from Parkview, Molesta from Parkview, the leader from Parkview, go out to, go find this rival gang member. And then they went out there, and they found this individual, and then they did nothing, which is contrary to what the government's gang expert would have said would have happened. There would have been a kill on site in broad daylight. Instead, they waited several weeks. Nothing happened. When they finally did something, it was in the mountains in a remote area at night where no message was being sent. And the only person that was there from Parkview was Molesto. And we know from the gang's expert that gang killings are clique-based, and we would expect same gang members from the same clique to be there. And this contrasts sharply with Rivas Gomez's story in terms of what he understood based on what he heard Molesto say in the car to Abel, which was that he had been, Molesto, had been looking for Abel for several days. He hadn't found him. He'd been looking for him because Abel had attacked Molesto and Little Whisperer. And that is very significant because, as the government's expert testified, when you have gang members who run away, they could be found in danger of being a coward, at which point that's a death sentence. So there was a very, very strong incentive for Molesto and Little Whisperer, who were from two different cliques, to solve this outside of the gang. And that is what it looks like very compellingly happened here, but for Marcus Castro's testimony. The very individual that the government complained about selectively was a master storyteller, told whatever he thought that agents wanted to hear. So why did they bring Rivas Gomez along? Why did they? Yeah. At the canal? How is it that Rivas Gomez ended up at the canal? Right, and so we should look at what happened at the canal. So at the canal... How does Rivas get there? Right, how does Rivas get there? We have to step back and look at what actually happened. So we've got Molesto, who's Parkview and a homeboy. We've got Castro, who's Parkview and a chicago. And that's significant because we've got two people who are authorized to do a gang killing based on the government's testimony. And it's also significant because the government's testifying expert said that the example was two individuals that were authorized to make a gang killing is sufficient. That's the example that we were provided. They were same clique, homeboy, chicago. Here we've got that. So why did Rivas Gomez get there? So we've got Molesto and Castro at the canal making phone calls and connecting with nobody, which the government expert testified is a sign it's not a gang killing. And they then, at that point, we get Castro, we get Rivas Gomez, Palancho, and Little Whisperer get to the canal. And the Parkview guy, Castro, gets in his car and goes home, which makes no sense. But what we've got is two junior individuals, Palancho, who there's no record evidence is anything but a The two of them are at a so-called planned murder without any murder weapon, with no change of clothes. They weren't whisked away. This is suggestive of the examples that we see from other cases. When they're using little they're using yes, go ahead. You still I'm still kind of curious about how Rivas Gomez actually got did he drive himself to the canal? So physically how he got there. Physically, he went over to the house where Palancho called him where he thought they were going to go smoke marijuana. When he got there, we have Palancho and Little Whisperer getting in the car and saying, hey, we got to go to the canal. Whose whose car was it? It was it was Rivas Gomez was driving the car. He was driving the car. Was it his car? I think it was technically his brother's car, but he was he was it was he was driving the car. They had just gotten the car several weeks ago. And as the government goes to this house, he gets there. Yes, he gets there. And your point is that he didn't know when he got there. He didn't know anything about a murder. There's no evidence that he knew anything about a murder. So he gets to the house. Correct. And they suddenly Whisperer and the other fellow said, we got to go to the canal. Yes. Is that right? Yeah, that that's that's what the testimony is that that molesto's car had broken down and they needed to go to the canal to help them out. Now, the ex-gangsters testified that a lot of these guys don't have cars. And so it's it's very valuable to find someone at a car and you can see them at the canal making a bunch of phone calls. So they then the three of them drive in Rivas Gomez's car, his family car. Correct. To the canal. Correct. And when they get to the canal, Rivas just stays by the car. So they get to the wrong side of the canal, which again points that this is not something that was planned in advance. And so they then walk over. They have to take a little hike to get to where molesto is. And then molesto said, no, you got to go get the car. I need the car over here. But Rivas Gomez isn't allowed to go back to the car by himself. He is escorted back to the car with Little Whisperer, who is armed with a machete. There's no evidence Rivas Gomez has a weapon of any sort. And so then he is directed to bring the car with Little Whisperer over to where molesto is. And is there any evidence at that point that he learned what was going on? Yes. I believe at that point, he's seeing someone who's being held at gunpoint. And so I think his testimony or his statement to law enforcement was that at that point, what do you expect is going to happen? It's not going to be a picnic. It's this is he's gotten himself into a very big mess, which at that point, he has no ability to walk away from without being killed or his family being killed. And Roseman doesn't ask for an individual to put themselves at risk. They have to be able to safely walk away. And he could not do that at the time from the car to where Abel was the victim. They walked up there. So Abel was in in the car with I mean, with molesto and Castro at knife point when they arrived at the wrong side of the canal and they walked over. And at that point, molesto said, no, I want the car over here because guess what? I'm not here to just get picked up. I want the car over here. And so that's when they went over there. Then it's another half an hour from there to drive to the mountain, if that's that's what your honor's asking. And when they got to the mountain. Yes. Did Rivas Gomez stay in the car? The evidence is that he he was out he was out of the car. The other guys went and took a bell over a fence and over a distance. And and Rivas Gomez stayed by the car. Now, at some point, as one would expect, he was called over because they're not going to let somebody who's gotten to that point not have their hands dirty. So he was brought over. But the evidence from the coroner is there was a lot of postmortem wounds that were inflicted. And Rivas Gomez, the position that he didn't know that he was still even alive at that point and where he said he struck the individual, there were postmortem wounds. So we have no idea whether Rivas Gomez did anything postmortem or not. But the coroner testified that at some point you wouldn't know unless you were a professional, whether he was dead or not. As Judge Lee said, the jury heard this whole story, correct? With with Castro, who is the only person that says that this was a gang killing. And that is what the government's entire case was based on. They don't have a federal case without that. And that is Castro and 100 percent Castro. And he was not able to confront Castro. And so we have a Crawford violation on steroids here. This goes far beyond what this Court was concerned about in Ocampo, which was just about the veneer of credibility when law enforcement was reading in testimonial statements. Here we have not only reading in testimonial statements, but vouching over and over again. His testimony is spot on. He made the serving were directed were in or that encompassed Rivas Gomez, that the judge admonished the jury to only use that evidence against Castro. No, the limiting instructions was specifically about when Castro was testifying to what he did. We know the government used these statements at its closing and in its rebuttal for against Rivas Gomez as the basis for this is a gang killing, which they needed it to be a retaliatory gang killing. And that came from Castro, and it was used against Rivas Gomez in the government's closing and in its rebuttal. There was absolutely no line drawn. This without it, there was no federal case against against Rivas Gomez. There had to be a retaliatory gang. So your point is irrespective of just putting aside for a moment, irrespective of the Miranda issue, irrespective of the of the jury instruction based on federal law, not California law, that there was just insufficient evidence is to count one. Is that what you're well as as to count one? Yes. But the bigger issue that I'm talking about besides that is the Crawford violation, which impacts both count one and count two because the government had to prove that this was actually a gang murder or a gang kidnapping. Otherwise, they don't have the element that shows that this was for the purpose of advancing within the gang. If it is not a gang killing, it is not done for that purpose. We don't have a federal crime. It's not a violation of 1959. And that is Castro, 100 percent Castro and all Castro. And your claim and your point is, is that Rivas Gomez was not allowed to cross-examine Castro on those points. Yes. The entire case built against him was based on Castro's statement, and he was deprived of his opportunity to confront. And we and this is particularly problematic when Castro's statements are not lining up with the blueprint that the government provided in terms of what we would expect for a gang murder. And we've got Castro being vouched for, as the government said, the best informant. And the government's complaining that Castro has a history of making things up to suit law enforcement. Okay. Thank you, counsel. Good morning, Your Honors. May it please the Court. Ross Pearson for the government. I just want to clarify a few points my colleague just argued because the argument seems to be what the facts were and what the jury should have believed them to be. But as this Court has pointed out, its job on review for sufficiency is to view the evidence in light most favorable to the government. And there's this statement that there was zero evidence that Rivas Gomez knew about this murder in advance. That is flat-out false because a rational juror could have found from several items of evidence that Rivas Gomez knew that this murder was going to be planned ahead of time. There's Snaker's statement that this was his way for Rivas Gomez to climb up in the clique to become a made man in MS-13. There was the call that Snaker's got from another member of Vatos Locos in the days leading up to the murder that said this murder was being planned by three different cliques, Parkview, Francis, and Vatos Locos, and that those, sorry, that the two cliques, Parkview and Francis, were calling for permission for a Vatos Locos member to participate. The only person there at the time of the murder, who was Vatos Locos, was Rivas Gomez himself. There was also the deleted Facebook call with Molesto the day before the murder, which I understand there are arguments why that might not have been a conversation about the murder, but that was for the jury to resolve. And then there were two calls, or sorry, there was also the gang expert's testimony in this case, that a murder like this would typically be well-planned, that everyone who would participate in this murder would know in advance. And what my colleague here was saying were facts, were a lot of things that Rivas Gomez said, things that were self-serving statements like, I didn't know ahead of time that this was going to happen, I didn't do anything once we got to the field until he was dead. The jury was free to disregard those facts, though, and that just goes to the sufficiency and what any rational juror could have found. Here, looking at the totality of the evidence, and especially viewing the inferences from these facts in the light most favorable to the government, the jury, any rational juror, easily could have found that Rivas Gomez knew about this murder in advance and that he participated because it was his way to advance in the gang. And that brings me to the second point that I want to just refute, that we relied on Marcos Castro's statements to prove this case. That is flat-out false, again. Our argument as to Rivas Gomez was that he committed this gang murder to climb the ranks in the gang. The statement, what he was directed by his fellow MS-13 members was to go out and kill someone. And to him, it didn't matter who he killed. He just had to kill someone to climb the ranks in the gang. And we did not argue at any point in our closing argument that Rivas Gomez killed Abel because Abel was a bulldog. Our argument, and you can take a look at 18 ER 4967 to 68, and then 4954. That's the part of closing where we're talking about Rivas Gomez. The only thing we argued was that Rivas Gomez killed Abel to climb the ranks in the gang, period. All right, counsel, but didn't the district court err by giving the federal jury instruction on aiding and abetting as opposed to the California instruction? No, Your Honor. And that's because Your position is not error. Not that it's error, but harmless. It's correct. It's either one. First off, it wasn't error. Correct? No, that's not an answer to my question. Our position is that Wasn't it error under our law to give the federal jury instruction on aiding and abetting instead of the California one? No, Your Honor. And that's because the Senate and the courts that have actually directly considered this issue all say that's how RICO and VICAR work. So the Senate specifically says that someone who orders or commands another person to commit a violation of VICAR is guilty under the federal aiding and abetting statute. And then you have courts like the Second Circuit and Diaz and Osborne that have directly considered this issue. They have held that you use federal theories of liability in VICAR cases. And that is directly from Diaz and Osborne, which is pages 27 and 28 of our brief. You mentioned in the indictment, though, that he committed a murder under California law. We did, Your Honor. And that's right there. I looked at it just to make sure. Correct. And that's why the court instructed under the elements for murder under California law. Why didn't he? He should have instructed under the aiding and abetting as well. You don't split things. You keep everything consistent. Well, respectfully, Your Honor, I think the courts have said you do split the baby so you don't have separate theories of liability. I don't think that's correct. I don't think that's the Ninth Circuit law. I don't think that's correct. So why don't you argue why it's harmless? Sure, Your Honor. Because I have questions. I know you argued that it was harmless because he was convicted as a principal. But what was the evidence that he was a principal and a killer? I mean, I think the evidence was that he maybe after other people had stabbed and macheted and whatever else the victim, that he made a few stabs, too. It's the same argument or the same evidence I just discussed. But I want to point out the clearest way that this Court can see that it's harmless is by looking at what the jury had to find to convict him under the elements actually given. The jury had to find that he knew of the plan to murder Abel Rodriguez in advance. It had to find that he had the specific intent to murder Abel Rodriguez. And if you look at the kidnapping instructions, you'll see that the jury had to find that he acted for the specific purpose, that he kidnapped Abel Rodriguez for the specific purpose of murdering him. That's one of the elements of the kidnapping instruction, that he acted for a nefarious purpose. And the only nefarious purpose that we argued and the only nefarious purpose that's supported by any of the evidence in the record is that he acted for the specific purpose of killing Abel Rodriguez. And whether you're under state law or federal law, kidnapping someone so they can be murdered, so they can be stabbed and hacked to death by your fellow gang members is aiding and abetting a murder. It makes it easier for the murder to happen. It specifically furthers and aids in the murder. We were saving the ineffective assistance error by saying he was convicted as a principal. I'm sorry, Your Honor. Can you rephrase that question? Well, so, you didn't understand what I was asking. So, my view is that it was error to give the federal jury instruction on California aiding and abetting when you had to prove California murder. But that error is saved and rendered harmless if he was convicted as a principal. And you just went back to arguing that he was convicted as an aider and abetter again. I'm not trying to argue that, well, we did argue both. We argued that he was guilty as a principal. But what I'm trying to point out to the court is that you can look at what the jury necessarily found in this case and see that just based on what the jury necessarily found here, that Rivas Gomez kidnapped Abel for the specific purpose of helping his fellow gang members murder him, that he knew of the plan ahead of time and that he acted with the intent to further that murder. That is murder under California law, too. And it's far different from the Reyes case that he cites in his appeal because in that case you just have a few gang members biking around and one of them pulls out a gun and shoots someone in the head. There's no evidence that the defendant knew about that planned murder in advance or did anything to help it. Here, just looking at what the jury necessarily found under these facts, there is ample evidence, or the jury had to find that Rivas Gomez knew about this planned murder in advance. And that's also why I highlighted earlier that when counsel relies on the facts and highlights the statements that Rivas Gomez made to detectives, the jury rejected those. The jury rejected those arguments. They just didn't believe his defense because if they had believed that defense, they would not have been able to find that he had advanced knowledge of the planned murder. They wouldn't have been able to find that he was acting with the intent to further that murder. And they wouldn't have been able to find that he was kidnapping Rodriguez for the specific purpose of murdering him. His defense was just, I showed up at this canal bank and had no idea what was going to happen. But by finding him guilty, they necessarily rejected that defense. Counsel just made a big point that Rivas Gomez's counsel at trial did not have the opportunity to cross-examine Castro. What's your response to that? It's common in joint trials for us to use each defendant's statement. And we didn't rely on Castro's statement or anything that Castro said in proving the case against Rivas Gomez. And as the jury heard his the jury heard it, but, Your Honor, as you pointed out in questions to my colleague, it heard it with a limiting instruction that specifically said you are only to take to consider Castro's statements against him. It didn't at all implicate Rivas Gomez. There was nothing in Castro's statement that pointed the finger at him. The only reason the jury ever heard that Castro said anything about Rivas Gomez was because his attorney chose to draw that evidence out on cross-examination. And if you look at the reply brief, it argues that we relied on Castro's statements in our closing argument to convict Rivas Gomez. One of the ‑‑ there are two citations, and I just want to clarify each of them. The first citation in the reply brief is to 18 E.R. 4984 to 85. Now, that is a section of our closing argument where we're talking about the evidence against Marcos Castro. We told the jury that we were going to divide closing into two parts. We talked about evidence against Rivas Gomez. In that section, we only argued that he killed Abel Rodriguez to climb the ranks in the gang, that he was going to be a made man if he killed Abel. We took a break, and then we moved to the evidence against Marcos Castro. And that's what they're citing to in the reply brief to say that we used Castro's statement against Rivas Gomez. It's simply not true. The second citation is from a single comment and rebuttal argument, 19 E.R. 5137, where we argued that Abel was killed because ‑‑ or that the defendant said Abel was a bulldog. The defendant said that Abel had chased a specific MS‑13 member with a bat. And I'll just point out that Rivas Gomez ‑‑ that was Castro's statement. We admit that was a stray comment. But Rivas Gomez's own statement mirrors that remarkably. Rivas Gomez said he imagined that Abel was killed because he was a bulldog, and that as they were confronting Abel on the drive to the mountains where they would ultimately kill him, that they said that Abel had chased them with a knife in advance of the murder and that they'd been looking for him for weeks. And you can see that at 3 E.R. 503 to 504. And so in more than 30 days of trial testimony, there's one stray comment that largely mirrored Rivas Gomez's statement. And in any event, the court gave repeated limiting instructions saying you can only consider Castro's statement as evidence against Marcos Castro. And so ‑‑ What happened in the trial? I can't remember. Maybe I didn't pay attention. Was Castro convicted too? No, Your Honor. The jury hung on him. That's what I thought because they sent back a note saying they were sure as to Rivas, but they ‑‑ Rivas Gomez, but they weren't sure as to Castro. But I didn't see the end where they hung. Correct. Correct. The jury couldn't reach a verdict as to him. It's odd that Castro, who's a cooperating informant with the government, ends up being tried with Rivas Gomez and then ends up with the jury hung on him. Just seems like an odd series of events. Yes, Your Honor. And as it relates to this appeal, it made ‑‑ there was simply no Crawford violation because we didn't use any of Castro's statements against Rivas Gomez. I'd be happy to answer any ‑‑ What is Castro's relationship with Rivas Gomez? This isn't in the record from trial, but based on Castro's statements, he said he knew Rivas Gomez pretty extensively, that he knew Rivas Gomez was an MS‑13 member and that he ‑‑ they hung out socially on a few occasions. That's not in the evidence from trial, again, because we took great lengths to make sure that the jury never heard anything that Castro said about Rivas Gomez. And, in fact, his ‑‑ Rivas Gomez's own attorney said that she had approved all of the United States Bruton redactions to Castro's statements. So what ‑‑ were all of the other participants in this prosecuted? They were not, Your Honor. They were ‑‑ they are at ‑‑ no, no, they weren't, Your Honor, for various reasons. Not all of them were located initially. Others have picked up charges in other districts that are ‑‑ All of the people who participated in this murder, Rivas Gomez is the only one who's been convicted in serving time? Castro has since pleaded guilty to the charges here, so he has also been convicted. And then there are references to Little Whisper, one of the people who also participated in this murder. He was convicted in state court. The panel has no further questions. We would ask that it affirm the conviction and the sentence in this case. Thank you. Thank you, counsel. Okay. I know you were over time, Assessor, but we'll give you some time to respond. Thank you very much, Your Honor. I would just like to point the court to the government's opening at 293 and 299. Rivas Gomez participated in the crimes charged because the victim in this was a member of a rival gang. By targeting and attacking a rival, he could help MS‑13 and promote within the gang. The government's rebuttal, which it just referred you to, said this was a gang crime because Abel was a bulldog, a beat‑up Palancher with a bat. And Mr. Castro, in fact, said that the same day he joined the surveillance team to go to the rival bulldog territory to locate and identify this assailant. Then later, at Site 5160, this was a gang crime because they were targeting a rival bulldog gang member for participating in a reprisal attack that bears all the hallmarks of MS‑13 tradecraft. That's how you know the defendants, plural, were knowledgeable and integral members of the team. Castro was 100 percent the source of all of that. And he did ‑‑ Rivas Gomez was denied his right to confront Castro's statements. And if we look at the sufficiency of the evidence issue, the advanced knowledge that the government's claiming was Snakers at a meeting in 2016, over a year and a half before this, there was no discussion of Abel. It was a discussion about the murder of Christina Echevria. So that is not advanced notice that Rivas Gomez had any idea what was happening before he got to the canal. Then we've already talked about the statement that Snakers received, even though he, by his own testimony, was not involved with MS‑13, was working for a different side, hadn't spoken to anyone for a year and a half, he suddenly gets a phone call about a three‑click gang murder that he didn't remember for two and a half years while debriefing, and for which there is absolutely no evidence that there was any meeting, any click meeting planning this remarkable three‑click gang murder. The government agent testified they went through social media. There was nothing, no evidence of any of that. And this idea that they asked Snakers for permission completely is rebutted by the government's own argument and rebuttal where they said it was preposterous that Snakers would have had any involvement here because he was from a different click. The only evidence, and it's not proof beyond a reasonable doubt, is a deleted message that we have no idea if there was any communication at all and only happened because we know Molesto called Rivas Gomez under threat of death if he did not delete all of the evidence in terms of their phone calls. This was just not a well‑planned click, not a well‑planned murder at all. There was no evidence that this was planned at all. And so I guess at the end of the day, I would ask the court where we have the theory of the case premised on Castro's statement entirely. That's the only way we get to 1959. Castro's credibility was repeatedly vouched for as being spot on. And I would note he pled to only one of the accounts, and that was about two years ago. He is yet to be sentenced. I think that speaks volumes there. At the same time that the government during this trial was complaining that Castro made things up as he went along. And we have the jury instructions that were changed. The court's absolutely right. He was charged with a State law predicate. He had to be instructed on a State law predicate. And with all of that, we would ask that the court reverse with respect to count one, find that there was insufficient evidence, and remand for trial with respect to count two. All right. Thank you, Counsel. U.S. v. Rivas Gomez will be submitted.
judges: WARDLAW, PAEZ, LEE